UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case Number 17-20782
    Honorable David M. Lawson

QURAN BIGLOW,

    Defendant.
_____/

**OPINION AND ORDER DENYING MOTION TO SUPPRESS EVIDENCE**

Defendant Quran Biglow is charged with illegally possessing a firearm as a convicted felon. The handgun was found in a car Biglow was driving when police stopped and searched it in Detroit on September 25, 2017. The police had a warrant to search the car, his house, and Biglow himself. The police also were aware at the time that Biglow had outstanding arrest warrants for state law violations and a federal probation violation. Biglow has filed a motion to suppress the gun, arguing that probable cause to search the car had not been established, and the search warrant was overbroad, because it authorized seizure of "all cell phones" found in the car. However, because the firearm was discovered during a search incident to a valid arrest, it is admissible in evidence regardless of the validity or invalidity of the search warrant. The Court will deny the motion to suppress on that basis.

I.

Members of the St. Clair County, Michigan Drug Task Force (DTF) suspected Quran Biglow of transporting illegal narcotic drugs from Detroit to Port Huron for sale there. Their suspicion, generated from an investigation over several months, was based in part on information from a confidential informant that Biglow, who was known as "Cheese," possessed illegal drugs and drove

them into St. Clair County from a location in Detroit. He usually had a female companion in the car with him, who concealed the drugs in a body cavity. DTF members also surveilled Biglow in April 2017 and saw him making hand-to-hand drug transactions near a house in Port Huron. A confidential source also told task force members that in May 2017, Biglow came to a house in Port Huron to drop off drugs every couple days.

DTF members executed five search warrants at various locations in Port Huron, seizing drugs and interrogating individuals, who told them that they were drug runners for "Cheese." A confidential source also told DTF members that "Cheese" drove a dark gray Nissan Altima when he made his drug deliveries to Port Huron every two or three days, and that he frequently was accompanied by a Hispanic female, who concealed the drugs in a body cavity. The investigators tracked down the owner of the gray Nissan through a combination of researching the defendant's Facebook profile and postings and searches of vehicle licensing records. Investigators observed that Biglow listed himself as "in a relationship" with a female Facebook user who stated in her own Facebook profile that she worked as a medical assistant at the Michigan Institute of Urology in Troy, Michigan. An informant identified the female Facebook user from a profile photograph as a girlfriend of "Cheese." The investigators received other information suggesting that the female then was residing at an address on Niles Drive in Troy, Michigan.

On August 24, 2017, at around 10:00 p.m., DTF officers conducted surveillance at the Niles Drive home, where they saw a dark gray Nissan with Arizona plates sitting in the driveway. While officers watched the residence, they saw Biglow walk from the house to the vehicle and place an item inside. On August 28, 2017, around 7:00 a.m., DTF agents were watching the Niles Drive address, when they again saw the same gray Nissan in the driveway, and later saw Biglow leave the

house, get into the car, and drive to the Michigan Institute of Urology. The DTF agents later found through a criminal history search that Biglow was on federal probation for weapons charges and had other outstanding warrants for state law charges.

The DTF agents put all this information into an affidavit and obtained a warrant from a state court magistrate on September 25, 2017 to search the residence on Niles Drive, the gray Nissan Altima, and Biglow's person. The warrant authorized the seizure of (1) "illegal controlled substances"; (2) "[a]ny and all cellular telephones (and contents of cellular telephones including, but not limited to, contacts, incoming / outgoing calls, text messaging and pictures) digital cameras and records (including electronically stored media and devices used to access said media) related to drug trafficking, receipts and drug paraphenalia"; and (3) "any and all weapons and ammunition."

That same day, DTF agents spotted Biglow driving the gray Nissan, with two female passengers along for the ride. They followed as he made several stops around Detroit. They requested backup from the U.S. Marshal Service because they had learned that Biglow had outstanding warrants for a supervised release violation charge in federal court and state arrest warrants for drug charges. The agents stopped Biglow based on the outstanding warrants, and they ordered him to get out of the car, but he did not comply. As they approached the car, officers saw Biglow "reach over a woman's lap toward the passenger door panel." The officers then broke the passenger door window of the car, unlocked the doors, and dragged the occupants out. During a search of the car they recovered various items including "a stolen .40 caliber handgun tucked underneath the passenger side door panel." The defendant also asserts that "[a] cell phone that had been in the car and fell when Mr. Biglow exited also was retrieved from the ground near the car."

Kenneth Blankertz, a U.S. Customs and Border Patrol agent, testified at the evidentiary hearing that he participated in the stop of the Nissan on September 25 in Detroit. He said that his group stopped the Nissan Biglow was driving because they had a warrant to search it, and there also was a state arrest warrant for resisting and obstructing a police officer, and a federal probation violation warrant. Blankertz approached the driver's side of the stopped car and told the occupant to open the door. Biglow was in the driver's seat facing the passenger and did not comply with the command. Eventually, after Biglow refused to unlock or open the door, another officer broke the passenger door window and gained entry. Blankertz pulled Biglow from the car. He was placed in handcuffs, as were the front and rear seat passengers.

Andrew Young, a St. Clair County deputy sheriff, also participated in the stop of the Nissan. He testified that several task force members exited their vehicles as soon as the Nissan was stopped, and they approached the Nissan. Young had his gun drawn and was yelling at Biglow to open the door. As Biglow approached the passenger side of the car, he saw Biglow reach across the front seat toward the passenger door. When he did not comply, Young went to his truck — about four feet away — and retrieved a "breaching tool" to break the Nissan's window, which he did. He pulled the female from the passenger seat. After everyone was secured, Young began his "tech duties" by photographing the scene. He also searched the car, he says, "incident" to the arrest of Biglow.

Young testified the he found a 40-caliber handgun in the passenger door panel. It was located inside the armrest. Young saw it there after he removed the passenger and returned to take photographs. The armrest cover had fallen to the ground, and Young saw the gun in a compartment in the opened passenger door. He said that he did not remove the armrest cover; it was already on

the ground when he first saw it. He surmised that the cover was not secured on the armrest itself, and it fell to the ground when someone opened the passenger door.

A grand jury returned an indictment against Biglow, charging him with a single count of possessing a firearm as a convicted felon. He filed a motion to suppress the weapon. The main thrust of his argument is that the search warrant is defective, because (1) its supporting affidavit does not establish probable cause to believe that evidence of a crime would be found in the car that the defendant was driving, at the time he was stopped, because evidence that he regularly deals drugs does not suffice to suggest that drugs would be in the car any time he is driving it; (2) the search warrant was overly broad because it allowed for the seizure of "all cell phones" found in the car; and (3) the "good faith" exception does not apply because no reasonable officer could have believed that the warrant was supported by an adequate factual basis for a finding of probable cause.

The government responded to each of these arguments. At the first hearing, however, the Court directed the parties to address the alternate justification for the seizure of the gun as incident to an arrest, for which arrest warrants had been issued. The Court granted the defendant's request to take testimony on that question. After the second hearing, the parties filed supplemental briefs.

II.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018) (quoting U.S. Const. amend. IV). "A search is generally unreasonable if it is not conducted pursuant to a warrant issued upon probable cause." *Ibid.* (citing *Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523, 528-29 (1967)). There are exceptions to this general rule, however.

One exception to the warrant requirement focuses on a search incident to a lawful arrest. *See Weeks v. United States*, 232 U.S. 383, 392 (1914). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *United States v. Robinson*, 414 U.S. 218, 230-34 (1973); *Chimel v. California*, 395 U.S. 752, 763 (1969)).

In *New York v. Belton*, 453 U.S. 454, 460 (1981), the Supreme Court held that when a vehicle occupant is lawfully arrested, the police contemporaneously may search "the passenger compartment of the automobile" and any containers found there. And that holding, the Court later observed, had become a license for an automatic search of a vehicle whenever the occupant was arrested, under all circumstances. *Gant*, 556 U.S. at 340-42. But the Court in *Gant* cabined *Belton*'s broad reach to conform it to the original justification for a search incident to arrest: the "police [may] search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343.

Biglow pounces on this language, arguing here that a search of the Nissan's passenger compartment could not be justified by his arrest on the outstanding warrants because when Deputy Young returned to photograph the passenger door and found the weapon in the armrest cavity, Biglow already was handcuffed on the ground outside the car, and the car interior was far outside his reach. There are at least two reasons why this argument will not carry the day for the defendant. First, it does not appear that Young was engaged in any active search of the car when he saw the firearm. He was photographing the scene, and the handgun was in the open because the armrest cover had fallen off. "It has been long settled that objects falling in the plain view of an officer who

has a right to be in the position to have that view are subject to seizure." *Harris v. United States*, 390 U.S. 234, 236 (1968).

Second, even if Young's activity can be characterized as a "search," "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). One of the justifications for the arrest was the warrant for Biglow's supervised release violation. According to the public docket, that petition alleged that DTF members saw Biglow engage in several hand-to-hand drug transactions on April 13, 2017, which violated the condition of his supervised release prohibiting him from committing any further state or federal crimes. It is undisputed that the arrest under the outstanding warrant was supported by probable cause. And it is well established that a "warrantless search of a vehicle 'incident to a lawful arrest' is constitutional where it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *United States v. Doyle*, No. 17-3363, 2018 WL 315095, at *4 (6th Cir. Jan. 8, 2018) (quoting *Gant*, 556 U.S. at 343). In this case, it certainly was reasonable for the police to believe that evidence of the defendant's hand-to-hand drug dealing might be found in his car, particularly where the DTF agents had extensively documented his ongoing drug running operation in which he used that same vehicle to transport drugs to his "runners."

Regardless of the validity of the search warrant, Biglow was stopped and arrested on a valid arrest warrant. The firearm was found in plain view in the vehicle, which the officers could search validly under the circumstances of this case. The seizure of the gun did not violate any of Biglow's rights under the Fourth Amendment. The motion to suppress will be denied.

III.

The defendant has not shown that the firearm was seized from his vehicle on September 25, 2017 in violation of any of his rights under the Constitution.

Accordingly, the defendant's motion to suppress evidence [dkt. #18] is **DENIED**.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated: June 5, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 5, 2018.

                            s/Susan Pinkowski
                            SUSAN PINKOWSKI